**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

PRISCILLA O'DELL, individually and as )     No. CV-08-0240-PHX-GMS
next best friend of SERINA DIAZ,        )
                                        )     **ORDER**
              Plaintiffs,               )
                                        )
vs.                                     )
                                        )
CASA    GRANDE    ELEMENTARY)
SCHOOL  DISTRICT  NO. 4;  FRANK)
DAVIDSON, Superintendent of Schools;)
SYLVIA  TROTTER,  Principal;  GARY)
THOMPSON, Vice-Principal; CITY OF)
CASA    GRANDE;    CASA    GRANDE)
POLICE    DEPARTMENT;    KEITH)
CHARLES,                                )
                                        )
              Defendants.               )
_____)

        Pending before the Court is the Motion for Partial Summary Judgment of Defendants
City of Casa Grande, Casa Grande Police Department, and Officer Keith Charles. (Dkt. #
24.)  Defendants Casa Grande Elementary School District No. 4, Frank Davidson, Sylvia
Trotter, and Gary Thompson joined in the motion.  (Dkt. # 26.)  For the reasons set forth
below, the Court grants Defendants' motion in part and remands the remaining claims to the
Arizona Superior Court.[1]

_____

        [1]Defendants City of Casa Grande, Casa Grande Police Department, and Officer
Charles have requested oral argument.  The request is denied because the parties have
thoroughly discussed the law and the evidence, and oral argument will not aid the Court's

# BACKGROUND

## I.   Facts

During the 2006-2007 school year, Plaintiff Sirena Diaz attended the Casa Grande Middle School ("the School") as a seventh grade student.  Non-party Raeven Perez also attended the School and was enrolled in some of the same classes as Diaz.

In late January and early February of 2007, Diaz was verbally and physically threatened by Perez.  In response to these threats, Plaintiff Patricia O'Dell, Diaz' mother, contacted Defendants Frank Davidson, the superintendent of Casa Grande Elementary School District No. 4 ("the District"); Principal Sylvia Trotter; Vice-Principal Gary Thompson; and Officer Keith Charles, the School Resource Officer ("SRO"), seeking intervention. The bullying and threats escalated despite O'Dell's efforts to resolve the situation and despite awareness of the threat by the SRO and other district/school officials.

On February 2, 2007, O'Dell received a telephone call from non-party Corey Graham, one of Diaz' classroom teachers, reporting that rumors were circulating around the school that Perez was planning to attack Diaz.  Consequently, Graham sent Diaz to Thompson's office to talk to him about the threats.  At the end of the class period, Thompson returned Diaz to her classroom.  That afternoon, Perez assaulted Diaz during a break between classes. As a result, Diaz alleges she suffered physical injuries and emotional distress.[2]

## II.   Procedural History

On January 31, 2008, Plaintiffs filed their First Amended Complaint in the Superior Court for the County of Pinal.  (Dkt. # 1 Ex. A.)  The First Amended Complaint alleges that

---

decision.  *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir. 1991).

[2]Defendants City, Casa Grande Police Department, and Officer Charles filed a motion to strike Plaintiffs' exhibits 1-6. (Dkt. # 35.)  In their reply, Defendants withdrew their objections to exhibits 2 and 3. (Dkt. # 39.)  Plaintiffs' Statement of Facts paragraphs 1-2, 7, 29, and 30 rely on exhibits 1 and 4-6.  Because the facts stemming from these exhibits are not relevant to the Court's findings, the motion is moot and the Court need not address the merits of the parties' arguments.

1  the City of Casa Grande ("the City"), Casa Grande Police Department, Officer Charles, the
2  District, Davidson, Trotter, and Thompson are liable for Perez' assault on Diaz. Specifically,
3  Plaintiffs' assert the following claims: (1) deprivation of due process rights under 42 U.S.C.
4  § 1983; (2) negligence in the City's and District's failure to train their employees pursuant
5  to Arizona's Anti-Bullying statute, A.R.S. § 15-341; (3) negligence in the protection of Diaz;
6  and (4) negligence *per se* under Arizona's Anti-Bullying statute. (*Id.*) After proper removal
7  of the action, (Dkt. # 1), Defendants City, Casa Grande Police Department, and Officer
8  Charles filed a motion for partial summary judgment on August 12, 2008, seeking judgment
9  on claims one, two, and four. (Dkt. # 24.) Defendants District, Davidson, Trotter, and
10 Thompson joined the motion seeking summary judgment on claim one only.

11                                    **DISCUSSION**
12 **I.    Summary Judgment Standard of Review**

13         A court must grant summary judgment if the pleadings and supporting documents,
14 viewed in the light most favorable to the nonmoving party, "show that there is no genuine
15 issue as to any material fact and that the movant is entitled to judgment as a matter of law."
16 Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);
17 *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). "Only disputes over
18 facts that might affect the outcome of the suit under the governing law will properly preclude
19 the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);
20 *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence
21 must be "such that a reasonable jury could return a verdict for the nonmoving party." 
22 *Anderson*, 477 U.S. at 248.

23         Summary judgment is appropriate against a party who "fails to make a showing
24 sufficient to establish the existence of an element essential to that party's case, and on which
25 that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Citadel*
26 *Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). Furthermore, the party opposing
27 summary judgment "may not rest upon the mere allegations or denials of [the party's]
28 pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."

1   Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

2   574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.

3   1995); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

4   **II.    Analysis**

5         **A.    Claim One – § 1983 Due Process Deprivation**

6         Title  42 of the United States Code section 1983 creates a cause of action against a

7   person who, acting under color of state law, deprives another of rights guaranteed under the

8   Constitution.[3]  Section 1983 does not create any substantive rights; rather, it is a vehicle

9   whereby plaintiffs can challenge actions by government officials as violating their federally-

10  protected rights.  To prove a case under § 1983, Plaintiffs must demonstrate that (1) the

11  action occurred "under color of state law" and (2) the action resulted in the deprivation of a

12  constitutional right or federal statutory right. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir.

13  2002).  "A person deprives another 'of a constitutional right, within the meaning of section

14  1983, if he does an affirmative act, participates in another's affirmative acts, or omits to

15  perform an act which he is legally required to do that causes the deprivation of which [the

16  plaintiff complains].'" *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (quoting *Johnson

17  v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).

18        Plaintiffs' first claim asserts that Diaz was "deprived . . . of her constitutionally

19  protected liberty interest in attending school without threat of harassment, violence or bodily

20  harm." (Dkt. # 1 Ex. A ¶ 80.)  Plaintiffs contend that Defendants Charles, Davidson, Trotter,

21  and Thompson "failed to protect Diaz from a known danger and by their indifference,

22  permitted the assault, made Diaz more vulnerable to it, and made her more likely to

23  experience the threatened assault." (Dkt. # 1 Ex. A ¶ 75-76.)  While it is clearly established

24  _____

25        [3]42 U.S.C. § 1983 states, in relevant part: "Every person who, under color of any
    statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of
26  Columbia, subjects, or causes to be subjected, any citizen of the United States or other person
    within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
27  secured by the Constitution and laws, shall be liable to the party injured in any action at law,
28  suit in equity, or other proceeding for redress . . . ."

that the Constitution protects a citizen's liberty interest in  her own physical safety, *see DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195 (1989) (holding that substantive due process creates a liberty interest in "freedom from unjustified intrusions on personal safety"), *DeShaney* demonstrates that Defendants had no constitutional duty under these facts to protect Diaz from harm by a private actor.  (Dkt. ## 34 at 2, 37 at 1.)

In *DeShaney*, a county department of social services had received several complaints that a child may have been abused by his father.  489 U.S. at 192-93.  Although the department took various steps to investigate the complaints and protect the child, it did not permanently remove him from his father's custody.  *Id.*  Ultimately, the father beat the child so severely that he suffered permanent brain damage and was rendered profoundly retarded. *Id.*  The child and his mother brought a § 1983 action against the department, arguing that it had violated the child's right to substantive due process by failing to protect him from his father's violence.  *Id.* at 193.  The Supreme Court held that the government's failure to protect the child did not violate a constitutional right.  *Id.* at 201-02.

In *DeShaney*, the Supreme Court made clear that the Fourteenth Amendment does not generally require the government to prevent private citizens from harming each other. "[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195.  "Its purpose was to protect people from the State, not to ensure that the State protected them from each other." *Id.* at 196.  The Supreme Court held, "[a]s a general matter . . . we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *Id.* at 197.

*Deshaney* and its progeny, however, have defined two narrow exceptions to its scope that Plaintiffs assert are applicable in this case.  These two exceptions are, first, when a state takes a person into "custody," confining him against his will, and, second, when the state creates the danger or renders a person more vulnerable to an existing danger.  *DeShaney*, 489 U.S. at 198-201; *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1078-79 (9th Cir. 1998) (interpreting *DeShaney* to establish an exception to the no duty to protect rule "when the

State takes a person into its custody and holds him there against his will" or "where the state affirmatively places the plaintiff in a dangerous situation").  Plaintiffs argue that both exceptions apply.

### 1.    Special Relationship/Custody Exception

In *Deshaney*, the Supreme Court recognized "that in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."   489 U.S. at 198-201.   The Supreme Court has recognized affirmative obligations to protect citizens in prison situations, in which the state deprives prisoners of the liberty to care for themselves, *see Estelle v. Gamble*, 429 U.S. 97 (1976), and when the state involuntary commits metal patients, for the same reason, *see Youngberg v. Romero*, 457 U.S. 307 (1982).   The Supreme Court stated that "when a State takes a person into its *custody* and holds him there *against his will*, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney*, 489 U.S. at 199-200 (emphases added).   The *DeShaney* Court explained:

> The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety – it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf.  In the substantive due process analysis, it is the State's affirmative act of restricting the individual's freedom to act on his own behalf-through incarceration, institutionalization or other similar restraint of personal liberty – which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*Id.* at 200 (citations and footnote omitted).

Plaintiffs maintain that Diaz "was in the custody of the State at the time of the assault and rendered unable to protect herself by virtue of the restraints placed upon her as a middle school student." (Dkt. # 30 at 9.)  Plaintiffs' position however, has been uniformly rejected

1    by courts that have considered the matter.  *See Veronica Sch. Dist. v. Acton*, 515 U.S. 646,

2    655 (1995) ("[W]e do not, of course, suggest that public schools as a general matter have

3    such a degree of control over children as to give rise to a constitutional 'duty to protect.'");

4    *Hasenfus v. Lajeunesse*,175 F.3d 68, 70-73 (1st Cir. 1999) (holding that a school had no duty

5    to protect a student from attempted suicide, even when there had been attempts by seven

6    other students in the preceding three months); *Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d

7    1412, 1414-16 (5th Cir. 1997) (holding that a school district could not be liable for a janitor

8    raping a student because compulsory school attendance laws do not create a special

9    relationship between the school and the student); *Wyke v. Polk County Sch. Bd.*, 129 F.3d

10   560, 570 (11th Cir. 1997) (holding that a school board had no constitutional duty to protect

11   a student from harming himself); *Walton v. Alexander*, 44 F.3d 1297, 1305 (5th Cir. 1995)

12   (holding that a state had no special relationship with a student who was molested by a fellow

13   student because the student attended school of his own free will); *Graham v. Indep. Sch.*

14   *Dist. No. I-89*, 22 F.3d 991, 993-95 (10th Cir. 1994) (holding that compulsory attendance

15   laws do not create a special relationship between school and student); *Dorothy J. v. Little*

16   *Rock Sch. Dist.*, 7 F.3d 729, 732 (8th Cir. 1993) (holding that state-mandated school

17   attendance does "not entail so restrictive a custodial relationship as to impose upon the State

18   the same duty to protect it owes to prison inmates"); *Black v. Indiana Area Sch. Dist.*, 985

19   F.2d 707, 713-14 (3rd Cir. 1993) (holding that a superintendent did not have a special

20   relationship with students and could not be liable for the molestation of students by a school

21   bus driver); *Maldonado v. Josey*, 975 F.2d 727, 729-33 (10th Cir. 1992) (holding that

22   compulsory school attendance did not sufficiently restrain a school child's liberty as to make

23   the defendant responsible for a student's accidental strangulation); *J.O. v. Alton Cmty. Unit*

24   *Sch. Dist. 11*, 909 F.2d 267 (7th Cir. 1990) (holding that "the government, acting through

25   local school administrations, has not rendered its schoolchildren so helpless that an

26   affirmative constitutional duty to protect arises. Whatever duty of protection does arise is

27   best left to the laws outside the Constitution, as  [the state] has done.").

28

1      Plaintiffs alternatively argue that "[w]hile the school custodial relationship alone does

2  not impose a general duty of protection under the Fourteenth Amendment, it should when

3  coupled with the state's restraint on a student's ability to protect herself against a bully at

4  school." (Dkt. # 30 at 9.)  However, there is no evidence suggesting that Officer Charles, the

5  school/district officials, the City, the Police Department, or the District restrained Diaz'

6  ability to protect herself from an assault by a third party.  Plaintiffs present no facts indicating

7  that any of the Defendants attempted or succeeded in restraining Diaz beyond the restraints

8  imposed by compulsory school attendance laws.  Thus, her claim that she was in the custody

9  of the state and that a special relationship existed fails as a matter of law.

10                    **2.    State-Created Danger Exception**

11      The Ninth Circuit has also interpreted *DeShaney* as creating a second exception when

12  "state actors . . . affirmatively place an individual in danger by acting with deliberate

13  indifference to [a] known or obvious danger."  *DeShaney*, 489 U.S. at 197.  To maintain a

14  claim under the state-created danger exception on these facts, Plaintiffs must establish that

15  the Defendants affirmatively placed Plaintiff "in a situation that was more dangerous that the

16  one in which [they] found [her]."  *Munger v. City of Glasgow*, 227 F.3d 1082, 1086 (9th Cir.

17  2000).[4]  A state official cannot affirmatively place an individual in danger by merely failing

18  to act.  *See Johnson v. City of Seattle*, 474 F.3d 634, 641 (9th Cir. 2007) (holding that a state

19  official's decision to switch from an aggressive operation plan to a more passive one "was

20  not affirmative conduct that placed the . . . [p]laintiffs in danger, because it did not place

21  them in any worse position than they would have been in had the police not come up with

22  any operational plan whatsoever").

23      Plaintiffs argue that "Defendants were deliberately indifferent to the danger they

24  created or exacerbated when they allowed Perez to remain in school and returned [Diaz] to

25  her class [the day of the assault]."  (Dkt. # 30 at 10.)  Therefore, the two actions Plaintiffs

26

27      [4]Plaintiffs argue that "Defendants offer no evidence . . . that they did not create or
exacerbate the danger to [Diaz]."  (Dkt. # 30 at 4.)  While Plaintiffs are correct, the burden
28  to establish that an exception to *DeShaney* applies lies squarely with the Plaintiffs.

1   argue that fit within this exception are (1) the decision to allow Perez to remain in school
2   despite her threatening behavior, and (2) the decision by Thompson to return Diaz to the
3   classroom after they had met.

4          Initially, Plaintiffs assert that "Perez had recently been suspended from [the School]
5   for similar assault behaviors" and that "[h]er behavior and potential for violence were known
6   to Trotter, Thompson, and Officer Charles." (Dkt. # 30 at 10.) Despite these assertions,
7   Plaintiffs fail to present any evidence indicating that Perez either had been suspended or had
8   been involved in assault-related behaviors prior to the assault on Diaz, or that, under the
9   circumstances, Defendants would have been remiss in re-admitting her to school. Therefore,
10  to the extent that Plaintiffs argue liability predicated upon Defendants' affirmative acts in
11  returning Perez to school, summary judgment is proper because, based on the evidence, no
12  genuine issue has been presented.

13         To the extent that Plaintiffs argue that any of Defendants failed to remove or properly
14  discipline Perez based on her threatening behavior, the Court finds that these omissions do
15  not fit within the exception. *See Stevens v. Umsted*, 131 F.3d 697, 705-06 (7th Cir. 1997)
16  (finding that a superintendent's failure to follow state law and remove or expel perpetrators
17  of sexual assault did not constitute affirmative conduct for purposes of the state-created
18  danger exception). Plaintiffs would have the Court extend the state-created danger exception
19  to subject state officials to liability for a failure to act. Such a decision would run contrary
20  to settled law. Plaintiffs have failed to offer any evidence indicating that any of Defendants
21  engaged in *affirmative conduct* that enhanced the danger faced by Diaz by failing to remove
22  or discipline Perez. While the Defendants were aware of the potential danger that Diaz
23  faced, they played no part in its creation by failing to remove or discipline Perez. Just as in
24  *DeShaney*, "[t]he most that can be said of the state functionaries in this case is that they stood
25  by and did nothing when suspicious circumstances dictated a more active role for them."
26  *DeShaney*, 489 U.S. at 203. Such a failure does not give rise to a § 1983 claim.

27         Second, Thompson's decision to return Diaz to the classroom did not violate Diaz'
28  due process rights. The critical inquiry in this respect is whether Thompson "*affirmatively*

1    *created* an actual, particularized danger [that the plaintiff] would not otherwise have faced."

2    *Kennedy*, 439 F.3d at 1063 (emphasis added).  The Supreme Court noted in *Deshaney*: "That

3    the State once took temporary custody of [the plaintiff] does not alter the analysis, for when

4    it returned [her] . . . it placed [her] in no worse position than that in which he would have

5    been had it not acted at all."  489 U.S. at 201.  Therefore, under the circumstances present

6    here, the decision of Thompson to return Diaz to the classroom did not render her more

7    vulnerable to a danger that she otherwise would not have faced.  Here, the risk of harm faced

8    by Diaz was not increased by Thompson merely because he discussed the threats with her

9    in his office and returned her to the classroom.  The facts do not indicate that Perez was even

10   a member of the class to which Diaz was returned.  Nor do the facts indicate that Diaz was

11   assaulted in the classroom, but rather that she was assaulted in the corridor that afternoon

12   between classes.

13          The only issue before the Court as it pertains to Plaintiffs' first claim is whether any

14   of the Defendants violated Diaz' constitutional rights by their failure to act.  As *Deshaney*

15   and its progeny make clear, they did not.

16          Plaintiffs make much of the fact that the Arizona legislature has passed an anti-

17   bullying statute, which imposes a variety of statutory duties on school boards.  *See* A.R.S.

18   § 15-341.  Plaintiffs even take the position that they "do[] not need to look to the Fourteenth

19   Amendment to impose a duty on the Defendants to protect students" and "[are] not relying

20   on the Fourteenth Amendment to impose a duty."  (Dkt. # 30 at 5.)  Plaintiffs appear to assert

21   that even if Defendants did not violate any of Diaz' federal rights, a state duty has

22   nevertheless been imposed by statute in Arizona sufficient to give rise to a constitutional

23   claim.  Ordinarily, a violation of state law cannot be a basis for a § 1983 action because 42

24   U.S.C. § 1983 provides a remedy for "deprivation of rights secured by the Federal

25   Constitution and Laws."  *Lovell By and Through Lovell v. Poway Unified Sch. Dist.*, 90 F.3d

26   367, 370 (9th Cir. 1996); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982);

27   *Cambell v. Burt*, 141 F.3d 927, 930 (9th Cir. 1998) ("As a general rule, a violation of state

28   law does not lead to liability under § 1983.").  The Court clearly stated in *DeShaney*:

> The people of [a state] may well prefer a system of liability which would place upon the State and its officials the responsibility for failure to act in situations such as the present one. They may create such a system, if they do not have it already, by changing the tort law of the State in accordance with the regular lawmaking process. But they should not have it thrust upon them by this Court's expansion of the Due Process Clause of the Fourteenth Amendment.

489 U.S. at 203. Even assuming Arizona lawmakers have chosen to create liability for the failure of state educational officials to act does not simultaneously create a constitutional duty sufficient to give rise to a § 1983 claim. Summary judgment is therefore granted in favor of Defendants on claim one.

**B.      State Law Claims 2-4**

Defendants City and Officer Charles also move for summary judgment on Plaintiffs' state law claims two and four. However, because the Court has entered summary judgment on Plaintiffs' only federal law claim, the original basis for federal jurisdiction over this case no longer exists. In this situation, the Court has the discretion either to retain jurisdiction over the case or to return it to the state court for disposition of the state law claims. *See Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, them under the conditions set out in § 1367(c)) (internal citations and quotations omitted). That decision is informed by the values of "economy, convenience, fairness, and comity." *Id.* at 1001 (internal quotations omitted). The United States Supreme Court has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

This case is still at a sufficiently early stage that no judicial economy will be lost in returning the case to state court, and the state court is best situated to decided the novel state law claims such as are presented by the anti-bullying statute. Therefore, the Court declines to exercise jurisdiction over Plaintiff's state law claims that remain and the remands them to state court.

**CONCLUSION**

Because no genuine issues of material fact exist as to whether the Defendants violated any of Diaz' federal rights:

**IT IS HEREBY ORDERED** that the Motion for Partial Summary Judgment (Dkt. ## 24, 27) as to claim one is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall **REMAND** the remaining claims to the Superior Court.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Strike (Dkt. # 35) is **DENIED** as moot.

DATED this 11th day of December, 2008.

_____
G. Murray Snow
United States District Judge